IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT W. CARNES,                )
                                 )
        Plaintiff,                )
                                 )
    vs.                          ) Civil Action No. 08-99
                                 )
COMMISSIONER OF SOCIAL           )
SECURITY,                        )
                                 )
        Defendant.                )

## MEMORANDUM OPINION

Plaintiff, Robert W. Carnes, seeks judicial review of a decision of defendant, Commissioner of Social Security ("the Commissioner"), denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.[1] Presently before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion for summary judgment will be denied, and the Commissioner's cross-motion for summary judgment will be granted.

---

[1]The Court has jurisdiction of this appeal under 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)), which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the individual resides.

1

## I. Background

Plaintiff filed an application for SSI on April 28, 2005, alleging disability since September 21, 2003 due to residuals of injuries sustained in a motor vehicle accident. (R. 12, 42-44, 50). Following the denial of Plaintiff's SSI application by the reviewing state agency, he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 26-33). At the hearing, which was held on August 17, 2006, Plaintiff, who was represented by counsel, testified. Plaintiff's mother and a vocational expert ("VE") also testified. (R. 398-435).

On September 18, 2006, the ALJ issued a decision denying Plaintiff's application for SSI based on his conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.[2] (R. 12-20). Plaintiff requested review of the ALJ's decision; however, the Appeals Council denied the request on November 24, 2007. (R. 5-7, 9). This appeal followed.

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence, which has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

---

[2]RFC is the most a disability claimant can still do despite his or her limitations. Hartranft v. Apfel, 181 F.3d 358, 359 n. 1 (3d Cir.1999)(citing 20 C.F.R. § 404.1545(a)).

2

It consists of something more than a mere scintilla, but something less than a preponderance. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Even if the Court would have decided the case differently, it must accord deference to the Commissioner and affirm the findings and decision if supported by substantial evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir.1986).

## II. Facts

Plaintiff's date of birth is March 21, 1986. He resides with his mother and stepfather who support him. (R. 61, 403, 408-09). Plaintiff is a high school graduate and, at the time of the hearing before the ALJ, he was taking some college courses. (R. 403-04). Plaintiff has no past relevant work experience. (R. 51, 409).

On September 21, 2003, when he was 17 years old, Plaintiff sustained traumatic brain and cervical spine injuries in a motor vehicle accident. Plaintiff was hospitalized at The Mercy Hospital of Pittsburgh ("Mercy Hospital") until October 7, 2003, when he was transferred to HEALTHSOUTH Rehabilitation Hospital of Greater Pittsburgh ("HEALTHSOUTH"), a long-term care facility. (R. 87-99). At the time of his transfer to HEALTHSOUTH, Plaintiff was not responsive to verbal commands, although he did seem to respond slightly to noxious stimuli. (R. 101).

3

In early December, 2003, Plaintiff was discharged from HEALTHSOUTH and went home with his parents. At the time of his discharge, Plaintiff was ambulating, climbing stairs, completing all self-care tasks and communicating "at a supervised to independent level." (R. 183). Plaintiff alleges that he is disabled due to residuals from the injuries sustained in the motor vehicle accident, which include short term memory loss, speech difficulties, balance problems, frequent vomiting due to scarring from long-term ventilatory support following the motor vehicle accident and anger. (R. 61-70, 406, 409, 412-13, 416-17, 420-22, 426-28).

The medical evidence in the administrative file includes records of Mercy Hospital (R. 81-97, 148-79), HEALTHSOUTH (R. 98-147), Pittsburgh Neurosurgical Associates (R. 180-96), Neurological Therapy Specialists, Inc. (R. 205-22), Dr. Muna Jabbour, Plaintiff's primary care physician (R. 224, 343-48), Dr. C. Rao Punukollu, a gastroenterologist (R. 349-58), Kreinbrook Psychological Services (R. 236-45, 287-328, 359-74), and Keystone Neuro-Rehab (R. 330-40, 342, 382-93), as well as the report of a disability examination by Dr. Victor Jabbour (R. 265-74), the report of a consultative neuropsychological examination by Mason B. Scott, Ph.D. (R. 226-35), and the report of Dr. Juan A. Lora, a gastroenterologist (R. 375-81).

4

The administrative file also contains the following evidence: (a) a list of Plaintiff's medications[3] (R. 78-80), (b) an Occupational Therapy Driver Evaluation (R. 197-204), (c) a Daily Activities Questionnaire completed by Plaintiff on June 20, 2005 (R. 61-70), (d) a Psychiatric Review Technique form and Mental RFC Assessment completed by a state agency psychological consultant on August 25, 2005 (R. 247-60, 261-64), and (e) a Physical RFC Assessment completed by a state agency physician on October 18, 2005 (R. 275-81).

In his decision, the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in the Social Security Regulations with the following limitations:[4] (a) no more than limited to occasional walking and/or standing; (b) no balancing or climbing of ladders, ropes or scaffolds; (c) no exposure to dangerous machinery or unprotected heights; (d) permits brief

---

[3] Plaintiff's medications include Nexium for vomiting and Zoloft for anger control.

[4] The Social Security Regulations define light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

access to a restroom on an unscheduled basis during the workday; (e) no more than simple, routine, repetitive tasks that are not performed in a fast paced production environment; (f) only simple, work-related decisions; (g) relatively few work place changes; (h) no more than occasional interaction with supervisors or coworkers; and (i) no interaction with the general public. (R. 15).

Based on the testimony of the VE, the ALJ found that a significant number of jobs exist in the national economy which Plaintiff could perform, including the light jobs of a routing clerk, a coupon redemption clerk and a flower picker, and the sedentary jobs of a ticket checker, a final assembler and a product inspector. (R. 18).

## III. **Analysis**

Plaintiff asserts that the ALJ's decision is flawed for three reasons. First, Plaintiff asserts that the ALJ erred by failing to address and consider the credibility of his mother's testimony. Second, Plaintiff asserts that the ALJ erred in concluding that his testimony concerning his impairments and their impact on his ability to work was not entirely credible. Third, Plaintiff asserts that the ALJ erred in relying on his sporadic activities of daily living to support a finding that he is not disabled. After consideration, Plaintiff's arguments are rejected.

**A**

Turning first to the issue of Plaintiff's credibility, the ALJ found that the testimony concerning Plaintiff's physical and mental impairments and their impact on his ability to work was "not totally credible."[5] (R. 17). In so finding, Plaintiff contends that the ALJ erred. Because the ALJ complied with Social Security Ruling 96-7p by setting forth specific reasons for his credibility determination and supporting those reasons with evidence,[6] including Plaintiff's statements and testimony, objective medical evidence and information provided by treating and examining sources, the Court does not agree.

**Plaintiff's Testimony and Statements**

In finding that Plaintiff's claim of total disability was not entirely credible, the ALJ took into consideration a questionnaire completed by Plaintiff on June 20, 2005 in connection with his application for SSI. Despite physical limitations from the residuals of the injuries sustained in the motor vehicle accident in September 2003, the ALJ noted that Plaintiff reported the ability to engage in a wide variety of

---

[5] With respect to the issue of credibility, the ALJ also stated in his decision that the testimony concerning Plaintiff's actual level of functioning was "mostly credible." (R. 18).

[6] Social Security Rulings are agency rulings published "under the authority of the Commissioner of Social Security" and "are binding on all components of the Social Security Administration." Sykes v. Apfel, 228 F.3d 259, 271 (3d Cir.2000).

7

physical activities, including mowing the lawn, cleaning his room, shopping, helping with general chores around the house, driving short distances, using a computer and visiting friends. Similarly, despite continuing mental limitations as a result of the injuries sustained in the September 2003 motor vehicle accident, the ALJ noted that Plaintiff reported the ability to adapt to change, make decisions and deal with authority figures. In addition, the ALJ noted that Plaintiff reported a decrease in his anger as a result of his prescribed medication. (Exhibit 3E).

The ALJ also considered Plaintiff's testimony at the hearing in assessing his credibility, noting that, despite his mental limitations, Plaintiff testified to playing Nintendo games and playing along with game shows on television, and that Plaintiff was able to respond to all questions asked of him at the hearing in an appropriate manner with no overt lapses in concentration. Finally, the ALJ noted that Plaintiff denied any side effects from his medications during the hearing.

**Objective Medical Evidence**

With regard to objective medical evidence that supports his credibility determination, the ALJ noted the following medical reports and records: (a) Plaintiff was ambulatory and independent in self-care as early as December 2003 when he was discharged from HEALTHSOUTH (Exhibit 4F); (b) an MRI of Plaintiff's brain

8

showed that the contusions sustained in the September 2003 motor vehicle accident were fading by January 2004 (Exhibit 4F); (c) studies of Plaintiff's cervical spine in January 2004 were essentially normal (Exhibit 4F); (d) Plaintiff was medically cleared to drive a motor vehicle on January 29, 2004 (Exhibit 5F); and (e) an esophagogastroduodenoscopy in August 2005 revealed that Plaintiff has a hiatal hernia and Barrett's esophagus which are treated with medication and dietary restrictions (Exhibit 19F).[7]

## Treating and Examining Sources

Regarding information from treating and examining sources, the ALJ cited the following medical evidence in support of his assessment of Plaintiff's credibility and RFC:

(a) The ALJ noted the report of Plaintiff's consultative physical examination by Dr. Jabbour in September 2005, which indicates that although Plaintiff's station is unsteady at times due to right sided weakness from the traumatic brain injury

---

[7]With respect to the evidence of esophageal problems, the ALJ accommodated Plaintiff's report of frequent vomiting in his RFC assessment by including a requirement that Plaintiff be permitted brief access to a restroom on an unscheduled basis during the workday. (R. 15). With respect to the frequency of Plaintiff's vomiting, the Court notes that the treatment notes of Plaintiff's psychiatrist, Dr. Polina Vassilieva, indicate that on August 3, 2005, Plaintiff reported vomiting approximately 4 times a week since the motor vehicle accident (R. 317); on November 30, 2005, Plaintiff reported that he had not vomited in awhile (R. 309); and, on January 11, 2006, Plaintiff reported that although he had experienced dry heaves, he had not vomited recently. (R. 308).

9

sustained in September 2003, his gait is normal and he has full range of motion. The ALJ also noted that in the Medical Source Statement completed by Dr. Jabbour in conjunction with Plaintiff's consultative physical examination in September 2005, the only physical limitations noted by the doctor were an inability to lift and carry more than 50 pounds occasionally and 25 pounds frequently, an inability to sit 6 hours in an 8-hour work day, and a need for glasses. With regard to standing, walking, pushing, pulling, postural activities and environmental restrictions, the ALJ noted that Dr. Jabbour opined that Plaintiff had no limitations. (Exhibit 12F).

(b) The ALJ noted the records of Dr. Engle, the neurosurgeon who treated Plaintiff immediately following the motor vehicle accident in September 2003, which indicate that by January 2004, Plaintiff was ambulatory and independent in self care,[8] and that he returned to college in January 2004.[9] (Exhibit 4F).

---

[8] Dr. Engle's records include a letter from Shelly George, a physical therapist who treated Plaintiff at HEALTHSOUTH, which states in relevant part: "Robert was discharged home with his parents in early December. He is ambulating, climbing stairs, completing all self-care tasks, and communicating at a supervised to independent level.... It is quite satisfying to be involved in such a remarkable recovery,... (R. 183).

[9] Although the ALJ states that Plaintiff returned to college in January 2004, in fact, Plaintiff returned to high school in February 2004, and he graduated in June 2004. (R. 56, 181). Plaintiff then enrolled in college and found that he was limited to two courses at a time due the residuals of his traumatic brain injury in September 2003.

10

(c) The ALJ noted the report of Mason B. Scott, Ph.D., who conducted a neuropsychological examination of Plaintiff over the course of five days in May and June of 2005. Specifically, the ALJ noted that although Plaintiff alleged increased irritability as a result of the injuries sustained in the September 2003 motor vehicle accident, he displayed no irritation or agitation during the examination by Dr. Scott. Regarding Plaintiff's speech difficulties following his traumatic brain injury, the ALJ noted that Dr. Scott described Plaintiff's speech as "slightly dysfluent," but "entirely intelligible." With respect to the tests administered by Dr. Scott, the ALJ noted that Plaintiff is in the average range of intellectual functioning, his ability to sustain concentration and attention is average to low average, his ability to read, write, spell and perform arithmetic is within normal limits, and his short term and working memory are within normal limits.[10] (Exhibit 8F).

(d) The ALJ noted the records of Plaintiff's cognitive rehabilitation therapy at Kreinbrook Psychological Services for the period June 15, 2005 to May 31, 2006, which indicate that

---

[10]The ALJ also acknowledged in his decision that the tests administered by Dr. Scott showed Plaintiff suffers from memory deficits, a poor ability to recall information, and difficulty with problem solving and concept formation, and the ALJ took these test results into consideration in assessing Plaintiff's RFC by limiting Plaintiff to work involving simple, routine, repetitive tasks in an environment which does not require a fast production pace.

Plaintiff had made strides in controlling his anger with therapy and medication, and that Plaintiff's grades in his college courses had improved with a tutor and certain accommodations.[11] (Exhibit 15F).

(e) The ALJ noted the records of, and a letter from, Plaintiff's treating therapist and psychologist at Keystone Neuro-Rehab, where Plaintiff began receiving cognitive rehabilitation therapy in January 2006 in connection with his college courses. Among other things, the ALJ noted that Plaintiff was able to learn general information, although he had difficulty with details. The ALJ also noted that some of Plaintiff's initial problems in college related to poor note taking skills, a need to devote more time to studying and a need to pay more attention to detail, and that with the help of a therapist and a different approach to his school work, Plaintiff's grades improved. (Exhibits 16F and 17F).

Based on the foregoing evidence cited by the ALJ in his decision, the Court is compelled to conclude that his credibility determination is supported by substantial evidence. In fact, it is clear from the ALJ's assessment of Plaintiff's RFC, which

---

[11]The ALJ also acknowledged in his decision that the records of Kreinbrook Psychological Services indicate that Plaintiff is more distractible since the accident and must re-read technical information to understand and remember it, which, as noted in footnote 10, was taken into consideration by the ALJ in assessing Plaintiff's RFC.

includes significant restrictions, that substantial weight was given to Plaintiff's testimony and statements concerning his limitations and their impact on his ability to work.

**B**

In Burnett v. Commissioner of Social Security, 220 F.3d 112 (3d Cir. 2000), a Social Security disability claimant with back and knee pain sought judicial review of the denial of her claim for disability benefits by the Commissioner. Among other things, the claimant argued that the ALJ erred by failing to mention and explain his reasons for rejecting evidence which was favorable to the claimant in making his RFC determination, including the testimony of the claimant's husband and neighbor. The Court of Appeals agreed, indicating that the ALJ must address this testimony on remand. Plaintiff asserts that, under Burnett, the ALJ in the present case erred by failing to address and consider the credibility of his mother's testimony at the hearing.

After consideration, the Court agrees with the Commissioner that Burnett is distinguishable because the ALJ in this case specifically acknowledged the testimony of Plaintiff's mother,[12] and he discussed the testimony offered at the hearing concerning Plaintiff's limitations in general. However, even if the Burnett decision required the ALJ to engage in a specific discussion of the testimony of Plaintiff's mother and to make a specific

---

[12](R. 12).

13

credibility assessment of her testimony, his failure to do so is harmless error. The testimony of Plaintiff's mother was essentially cumulative to Plaintiff's testimony and further discussion of her testimony would not have changed the outcome. As discussed in the previous section of this opinion, the decision to deny Plaintiff's application for SSI was supported by substantial evidence, including objective medical evidence and information provided by Plaintiff's treating and examining sources. Under the circumstances, a remand for further consideration of the testimony of Plaintiff's mother is not required.[13] See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir.2005)(refusing to remand where stricter compliance with a social security ruling would not have changed the outcome of the

---

[13]Significantly, in Burnett, the ALJ's total disregard of the testimony of the claimant's husband and neighbor was not the only basis for the Court of Appeal's remand of the case for further proceedings. The decision of the ALJ in Burnett was rife with errors requiring a remand. Specifically, the Court of Appeals held that (1) the ALJ erred at step three of the sequential analysis (i.e. whether the claimant's impairments met or equaled a listed impairment) because his one-sentence step three finding was conclusory precluding meaningful judicial review; (2) the ALJ erred in assessing the claimant's RFC at step four of the sequential analysis by failing to mention or refute some of the medical evidence which was favorable to the claimant, including the diagnoses of two physicians, an MRI of the claimant's knee, the reports of three physicians and one physician's assessment that the claimant could sit and stand only "intermittently;" (3) the ALJ erred by failing to properly consider the combined effects of the claimant's back and knee pain; and (4) in light of uncontroverted evidence indicating that the claimant's past relevant work involved "medium" work, the ALJ erred in finding that the claimant's past relevant work involved "light" work.

14

case); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir.1989) (stating that "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a difference result.").

C

Finally, Plaintiff argues that the ALJ erred in relying on his sporadic activities of daily living to support a finding that he is not disabled. In support of this argument, Plaintiff cites Frankenfield v. Bowen, 861 F.2d 405 (3d Cir.1988), and Smith v. Califano, 637 F.2d 968 (3d Cir.1981). Again, the Court finds the cases on which Plaintiff relies distinguishable from the present case.

The claimants' daily activities on which the ALJs relied in denying disability benefits in Frankenfield and Smith were much more limited than Plaintiff's activities. In Frankenfield, the claimant reported that he could take care of his personal needs, perform limited household chores and occasionally go to church, and the claimant in Smith testified that he shopped and had gone hunting on two occasions the previous fall. In contrast, Plaintiff reported in a questionnaire completed on June 20, 2005 that he was independent with respect to personal care; he could drive; he mowed the lawn and did other yard work; he dusted his room and made his bed; he used a microwave to heat food; he

15

helped his mother with shopping; he attended college on a part-time basis; he watched movies and used a computer; he folded and put away laundry; and he visited friends and relatives. In sum, Plaintiff's activities cannot be characterized as sporadic or transitory. Accordingly, the ALJ did not err in relying on Plaintiff's daily activities to support the denial of his application for SSI.

**IV. Conclusion**

For the foregoing reasons, the decision of the ALJ denying Plaintiff's application for SSI will be affirmed.

*William L. Standish*
William L. Standish
United States District Judge

Date: November 4, 2008

16